FILED IN OFFICE

Ω 243 (Rev. 5/85)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District DISTRICT OF MASSACHUSETTS | |
|---|---|---|
| Name of Movant MARGARITA MUNOZ | Prisoner No. 22953-038 | Case No. 1-99-CR-10407 |
| Place of Confinement ALDERSON PRISON CAMP BOX A   ALDERSON, WEST VIRGINIA   24910 | | |

# 04 11699 EFH

| UNITED STATES OF AMERICA | v. | MARGARITA MUNOZ (name under which convicted) |
|---|---|---|

## MOTION

1. Name and location of court which entered the judgment of conviction under attack _____

**MAGISTRATE JUDGE**

US DISTRICT COURT - DISTRICT OF MASSACHUSETTS - BOSTON

2. Date of judgment of conviction ___ APRIL 18, 2002 ___

3. Length of sentence ___ 120 MONTHS ___

4. Nature of offense involved (all counts) ___ CONSPIRACY TO DISTRIBUTE AND TO POSSESS ___
WITH INTENT TO DISTRIBUTE HEROIN AND COCAINE IN VIOLATION OF 21 U.S.C. § 846.

5. What was your plea? (Check one)
   (a) Not guilty        ☐
   (b) Guilty            ☒
   (c) Nolo contendere   ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)   N/A
   (a) Jury        ☐
   (b) Judge only  ☐

7. Did you testify at the trial?        N/A
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐
   I SUBMITTED A NOTICE OF APPEAL BUT I WAS NEVER SENT THE DOCUMENTS TO PROCEED
   WITH THE APPEAL.

To:  Clerk of Court

Fr:  Margarita Munoz

FILED
IN CLERKS OFFICE.

2004 JUL 27  A II: 45

Enclosed Please find a §2255 Motion to Vacate, Set Aside or Correct Sentence.

U.S. DISTRICT COURT

Also attached is the first page of the Application and a self-addressed envelope. DISTRICT OF MASS

Would you please stamp the attached page and return it to me in the self-addressed stamped envelope.

I thank you in advance.

Sincerely;

Margarita Munoz

243 (Rev. 5/85)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District<br>DISTRICT OF MASSACHUSETTS | |
|---|---|---|
| Name of Movant<br>MARGARITA MUNOZ | Prisoner No.<br>22953-038 | Case No.<br>1-99-CR-10407 |
| Place of Confinement<br>ALDERSON PRISON CAMP BOX A  ALDERSON, WEST VIRGINIA  24910 | | |

UNITED STATES OF AMERICA          V.          MARGARITA MUNOZ
(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack _____

US DISTRICT COURT - DISTRICT OF MASSACHUSETTS - BOSTON

2. Date of judgment of conviction ____ APRIL 18, 2002 ____

3. Length of sentence ____ 120 MONTHS

4. Nature of offense involved (all counts) __CONSPIRACY TO DISTRIBUTE AND TO POSSESS__
WITH INTENT TO DISTRIBUTE HEROIN AND COCAINE IN VIOLATION OF 21 U.S.C. § 846.

_____

_____

5. What was your plea? (Check one)
   (a) Not guilty   ☐
   (b) Guilty   ☒
   (c) Nolo contendere   ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

_____

_____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)   N/A
   (a) Jury   ☐
   (b) Judge only   ☐

7. Did you testify at the trial?   N/A
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐
   I SUBMITTED A NOTICE OF APPEAL BUT I WAS NEVER SENT THE DOCUMENTS TO PROCEED
WITH THE APPEAL.

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:    N/A

   (a) Name of court _____

   (b) Result _____

   (c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:    N/A

   (a)(1) Name of court _____

    (2) Nature of proceeding _____

    (3) Grounds raised _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?    N/A
Yes ☐ No ☐

    (5) Result _____

    (6) Date of result _____

   (b) As to any second petition, application or motion give the same information:    N/A

    (1) Name of court _____

    (2) Nature of proceeding _____

    (3) Grounds raised _____

AO 243 (Rev. 5/85)

    (4) Did you receive an evidentiary hearing on your petition, application or motion?   N/A
    Yes ☐ No ☐

    (5) Result_____

    (6) Date of result _____

  (c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?  N/A
    (1) First petition, etc.    Yes ☐ No ☐
    (2) Second petition, etc.   Yes ☐ No ☐

  (d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

   CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

   For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

   Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

  (a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
  (b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 5/85)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: DEFENSE COUNSEL VIOLATED PETITIONER'S SIXTH AMENDMENT CONSTITUTIONAL

RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

SEE ATTACHMENTS PAGES  /  TO  4

_____

B. Ground two: DENIAL OF PETITIONERS FIFTH AND SIXTH AMENDMENT RIGHT TO AN

APPEAL

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

SEE ATTACHMENTS PAGES  5   TO  7

_____

C. Ground three: PETITIONERS SIXTH AMENDMENT RIGHT TO HAVE A JURY DECIDE

CERTAIN FACTS WHICH LENGTHENED HER PRISON TIME.

Supporting FACTS (state *briefly* without citing cases or law): _____

AS STATED UNDER BLAKLEY V. WASHINGTON WAS DENIED.

SEE ATTACHMENTS PAGES 8 to 12

AO 243 (Rev. 5/85)

D. Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

GROUND THREE WAS NOT PREVIOUSLY PRESENTED DUE TO THE FACT THAT THE NEW DECISION

OF BLAKELY V. WASHINGTON, 540 U.S. 965 WAS ONLY DECIDED ON JUNE 24, 2004.

_____

_____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing  MR. MORRIS GOLDINGS; MAHONEY, HAWKES & GOLDING, 75 PARK PLAZA

BOSTON.

(b) At arraignment and plea  MR. MORRIS GOLDINGS; MAHONEY, HAWKES & GOLDING, 75 PARK PLAZA

BOSTON.

(c) At trial  N/A

(d) At sentencing  MR MICHAEL COHEN, 601 S. LASALLE STREET, SUITE #700 CHICAGE, ILL

60605.

AO 243 (Rev. 5/85)

(e) On appeal  MR. MICHAEL COHEN WAS SUPPOSE TO REPRESENT ME ON APPEAL BUT HE DID

NOT DO SO.

(f) In any post-conviction proceeding  PRO SE


(g) On appeal from any adverse ruling in a post-conviction proceeding  N/A


16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future:  N/A



(b) Give date and length of the above sentence:  N/A


(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?    N/A
Yes ☐ No ☐


Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.


N/A
Signature of Attorney (if any)


I declare under penalty of perjury that the foregoing is true and correct. Executed on

7/19/04
(date)

Signature of Movant
PRO SE

A-I. Defense Counsel, Mr. Morris Golding provided ineffective assistance of counsel
     by his failure to adhere to his duty to consult with Petitioner on important
     decisions and by his failure to keep Petitioner informed of important developments
     in the course of the prosecution.

     The standard governing claims of ineffective assistance of counsel was stated
in Strickland v. Washington, 466 U.S. 668, 687 (1989) as a two-prong showing.  First,
the defendant must show that Counsel's performance was deficient...Second the defendant
must show that the deficient performance prejudiced the defense.  This requires a
showing that counsel's errors were so serious as to deprive the defendant of a fair
trial, a trial whose result is reliable.  In connection with the first prong, "judicial
scrutiny of counsel's performance must be highly deferential...[a] court must indulge
a strong presumption that counsel's conduct falls within the wide range of reasonable
professional assistance", the proper standard for attorney performance is that of
reasonably effective assistance, "defined as" reasonableness under prevailing professional
norms", Id. at 689, 687-88.  The court must make this determination "considering all
the circumstances", based upon, "the facts of the particular case, viewed at the time
of counsel's conduct."  Strickland, 466 U.S. at 688, 690.  As for the prejudice requirement,
"the benchmark for judging any claim of ineffectiveness must be whether counsel's
conduct so undermined the proper functioning of the adversarial process that the trial
cannot be relied on as having a just result."  Strickland, 466 U.S. at 686.  However,
this standard does not require the petitioner to prove that he or she would not have
been found guilty.  Woodward v. United States, 719 A. 2d 966, 991 (D.C. 1998), but
that "there is a reasonable probability, but for counsel's unprofessional errors,
the result of the proceedings would have been different."  Strickland, 466 U.S. at
695.

     Strickland also points out that..."representation of a criminal defendant entails
certain basic duties.  Counsel's function is to assist the defendant and hence counsel
owes the client a duty of loyalty, a duty to avoid conflict of interest...from counsel's

function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties <u>to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.</u>  Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adverserial testing process." <u>Id</u> at 694.

Defense Counsel, Mr. Golding breached his <u>"duty to consult"</u> with petitioner in terms of negotiating a final plea.

Petitioner's case actually started on January 20, 2002 on that day, Petitioner was getting ready at 5:00 a.m. to go to work.  There was banging on her door.  Petitioner heard federal agents banging and telling her to open the door at once.  (Affidavit #4).

When Petitioner opened the door, two agents entered her home.  They read Petitioner her Miranda rights <u>in</u> English – of course, Petitioner did not understand what they were saying.  Petitioner does not speak or read English fluently.  (Another inmate who is bilingual wrote this for Petitioner in English after Petitioner wrote it down for her in Spanish).  (Affidavit #5).

After reading her Miranda rights <u>in</u> English, the agents then asked Petitioner if she understood what they were saying.  Petitioner was so nervous that she told them "yes".  One of the agents started asking her a lot of questions.  When Petitioner told them she wanted to speak to a lawyer, they told her that would not be a good idea if Petitioner wanted them to help her.  They then asked Petitioner if she had any drugs or money in the house.  Petitioner told them that she did not have any drugs.  Petitioner told them that she had $39,000 in the house.  They informed Petitioner that if she told them everything and assisted them with this case that she would get a reduction in her time.  (Affidavit #6).

Based on the fact that they told Petitioner that she would get a "shorter" sentence if Petitioner assisted them, when Petitioner got to the police station in Revere and was fingerprinted, Petitioner told them everything she knew.  They <u>told</u> her to call

Carlos Matias on the telephone.   They wanted him and they were going to use petitioner
to set him up.   (Affidavit #7).

Petitioner did everything the agents asked.   Petitioner called Carlos Matias
on the phone which they gave her.   Petitioner spoke to him while they listened in
on her conversation.   They said that "they had gotten what they needed" after she
hung up from there conversation Petitioner was then taken to court (with all her other
co-defendants) They were brought before the Magistrate.   Petitioner was assigned a
Court appointed attorney, however, the lawyer who represented Petitioner's husband –
his name was Morris Golding – told Petitioner not to accept the court appointed attorney.
He told Petitioner that he would be able to handle her case along with that of her
husband.   Petitioner agreed.   (Affidavit #8).

A few days later, Petitioner was then taken to see the prosecutor.   He told Petitioner
with her attorney there that if she told hem everything that he would see to it that
she received a reduction.   Petitioner didn't know what he meant but her attorney Mr.
Golding told her to tell hem everything – that Petitioner would be able to get a "5K2.19
reduction."   Again, Petitioner really did not know what he meant but she realized
that it would help her not to have to go to prison.   They also told Petitioner that
if she signed a plea agreement that she would also get a 3 point deduction from her
overall sentence.   A a result, Petitioner did exactly what they told her to do.   Petitioner
told her husband to do the same.   (Affidavit #9).

Petitioner's attorney, Mr. Morris Golding told Petitioner that if she told them
the truth and answered all their questions that she would only get a two year sentence.
He promised Petitioner that in front of the prosecutor.   He said that he and the Prosecutor
had talked and had reached an agreement. Petitioner believed him so she told them
everything that she knew.   (Affidavit #10).

They stopped taking Petitioner to court for a while.   Petitioner didn't know
why (at the time) but she later found out that her attorney Mr. Morris Golding had
been arrested and sentenced to prison and had his license to practice revoked.   (
See Exhibit 1).   (Affidavit #11).

Petitioner's attorney, Mr. Golding was charged with stealing $17 million dollars from several of his clients. Mr. Golding pleaded guilty to this charge and was sentenced to five years in prison. (Affidavit #12).

The only way that Petitioner discovered this information about her attorney was from her sister who told her about it and sent her some newspaper clippings. ( See Exhibit #1).

Petitioner's attorney, Mr. Golding breached his duty to consult with Petitioner on important decisions. He also failed to keep Petitioner informed of important developments in the course of the prosecution.

Having shown a deficient performance, Petitioner now turns to demonstrating the second prong under Strickland, supra; that is, the reasonable probability that but for Counsel Golding's error, the result of the proceeding would have been different.

B-I.  Defense Counsel, Mr. Michael Cohen provided ineffective assistance of counsel
      by his failure to use his skill and knowledge to render the trial a reliable
      adverserial testing process.  Defense Counsel failed to ensure Petitioner's
      right to appeal her case.


      Petitioner remained in Nante, Connecticut for several months after her first
attorney was convicted of mail fraud, wire fraud and money laundering.

      In July of 2001, while she was still in Connecticut, a lawyer by the name of
Michael B. Cohen told Petitioner that he was going to represent both Petitioner and
her common law husband Enrique Mejia.  Mr. Cohen told Petitioner not to worry about
anything, that he was going to resolve everything for them.  Since Petitioner was
so scared, Petitioner told him O.K. and accepted everything he told her.  (Affidavit
#13).

      After that day, Attorney Michael Cohen called Petitioner again in order to meet
and discuss her case.  Petitioner was then taken to Framingham, Mass and in that same
week, Petitioner was taken before the Magistrate, Ms. Bowel.  Petitioner met with
Mr. Michael Cohen.  He took Petitioner into a small room near the courtroom and told
her what to expect when she went inside.  He told her that he was going to represent
both her husband Enrique Mejia and her.  Mr. Cohen told Petitioner just to say "yes"
to everything he said.  At this hearing, Mr. Cohen was appointed as their attorney.
After the hearing, Petitioner was taken back to Niante, Connecticut.  Petitioner tried
on several different occassions to reach her attorney, but to no avail.  Petitioner
tried calling him but he never answered the phone.  Petitioner's family tried to call
him but he did not respond to them either.  Petitioner left several messages but he
never called her back - never.  Petitioner's family left messages as well but he never
called them back either.  (Affidavit #16).

      Petitioner's husband was the one who wrote and told Petitioner that they were
going to court on October 28, 2001.  In fact, on October 28, 2001 only Petitioner's
husband was taken to court.  Petitioner however was not taken at that time.  (Affidavit

#17).

In January of 2002, Petitioner was taken back to Massachusetts. Petitioner was taken back to court without her attorney. Petitioner was forced to meet with the Prosecutor who again started to question her. He asked Petitioner if she knew Joel Nunez and that if she told him where Mr. Nunez was that she would only be sentenced to 2 years. Petitioner told him that she didn't know exactly where he was but that she thought he was in a small town in Massachusetts or else he would have returned to the Dominican Republic. Petitioner also told the Prosecutor other things he needed to know. (Affidavit #18).

On April 18, 2002 both Petitioner and her husband were taken to court in order to get sentenced. On that day, they sentenced Petitioner's husband to 10 years. They took Petitioner as well so that she could plead guilty and get sentenced. Judge Edward Harrington however did not want to sentence petitioner that day since the Prosecutor was requesting 10 years for her as well. (Affidavit #19).

Judge Edward Harrington told the prosecutor to take two weeks and work something out. On the same day Petitioner met with her attorney. He went over her PSI with her. Petitioner told him that there were a lot of lies on it. He told her that he would have them corrected; He never did correct them. (Affidavit #20).

On May 20, 2002 Petitioner was again taken to be sentenced. Even though her Attorney Mr. Golding had made a promise to her that she would get her 3 points for acceptance of responsibility and a 5K2.19 reduction even though the Prosecutor promised that she would receive a two year sentence, they all lied to her. Petitioner was sentenced to 10 years. The exact amount of time as her husband who was a repeat offender. yet received a 10 year sentence. After all the assistance Petitioner had given to the Prosecutor, She still received a ten (10) year sentence. Everyone lied to her. (Affidavit #21).

After sentencing, Judge Edward Harrington informed Petitioner that she had the right to appeal her case. When she returned to the prison, Petitioner notified the court that she wanted to appeal her case. The letter dated 5-24-2002 was noted on

on Petitioner's Docket Sheet as item #390 (Exhibit #2).  In said letter, Petitioner also requested that an attorney be appointed to represent me.  Petitioner never heard from the court.  (Affidavit #22).

Petitioner notice of appeal was never sent to the appellate court.  Petitioner Attorney, Mr. Cohen was ineffective in his failure to ensure that Petitioners appeal was addressed by the appellate court.

By April 30, 2003 Petitioner still had not heard from the Court or from anyone. As a result, Petitioner a lay person, filed a motion with the Prosecutor telling him that she still needed to get her reduction.  (See Docket  # 414 and 417).

Petitioner finally received a reply from the Prosecutor.  (See Exhibit #3).  Mr. John Farley indicated that there was nothing that he could do however he acknowledged the fact that a big mistake had been make by the court when they failed to send petitioners case to the court of appeals.  Again in his memorandum, Mr. Farley indicated that he would notify the court about their failure to process Petitioner's appeal.  Even having done so - Petitioner still has not heard from the court.  (Affidavit #27).

The Supreme Court in Rodriguez v. United States, (1969) 395 U.S. 327, 23 L. Ed. 2d 340, 89 S.Ct. 1715 has ruled that relief is obtainable under 28 U.S.C.S. § 2255 upon showing of the deprivation of a right cognizable thereunder and without an additional showing that the deprivation was prejudicial rather than harmless error.

Petitioner has more than demonstrated that as a result of the ineffective assistance of counsel which she received from both Mr. Golding and Mr. Cohen, that she was denied her constitutional right to an appeal.  The record of Petitioner's case "speaks for itself."  As a result Petitioner is entitled to § 2255 relief.

C-I.   Petitioner was denied her Sixth Amendment Constitutional Right to have a jury
decide certain facts which resulted in the lengthening of her prison sentence
and as spelled out under Blakely v. Washington.


On April 18, 2002, Petitioner appeared before the Honorable Judge Edward F. Harrington,
and entered a plea of guilty to conspriacy to distribute heroin and cocaine in violation
of 21 U.S.C. § 846.

Petitioner was enhanced a total of between 4 to 6 points for relevant conduct.
( See PSR).

Petitioner neither admitted nor was the 4 to 6 points enhancements found by a
jury.  The sentence based in the 4 to 6 points enhancement violated Petitioner's Sixth
Amendment Constitutional Right to a trial by jury.

Americans right to a jury trial is more than two centuries old.  The right to
have a jury make the ultimate determination of guilt has an impressive pedigree.  Blackstone
described "trial by jury" as requiring that "the truth of every accusation whether
preferred in the shape of indictment, information or appeal should afterwards be confirmed
by unanimous suffrage of twelve of the defendants equals and neighbors."  Justice
story wrote that "trial by jury" guaranteed by the Constitution was "generally understood
to mean...a trial by a jury of twelve men, impartially selected who must unanimously
concur in the guilt of the accused before a legal conviction can be had."

One important purpose of the sixth Amendment's jury trial guarantee is to protect
the criminal defendant against potentially arbitrary judges.  If effectuates this
promise be preserving as a constitutional matter certain fundamental decisions for
a jury of one's peers as opposed to a judge.  The jury trial guarantee was also safeguard
against the corrupt or overzealous prosecutor and against the complaint, biased or
eccentric judge."  Thus, Although a judge may direct a verdict for the defendant if
the evidence is legally insufficient to establish guilt, he may not direct a verdict
for the government not matter how overwhelming the evidence.  A judge in a criminal
case may not direct a verdict, even a partial verdict, for the government even though

the evidence is overwhelming or even undisputed on the point.

The rule is firmly established that the trial judge cannot direct a verdict in favor of the government for all or even one element of a crime. The former Fifth Circuit emphatically stated this principle:

> "No fact, not even an undisputed fact may be determined by the Judge. The plea of not guilty puts all in issue, even the most potent truth. In our federal system, the Trial Court may never instruct a verdict either in whole or in part."

The rational behind this rule is respect for and adherence to the jury system. The jury's overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in Command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgement of conviction or directing a jury to come forward with such a verdict regardless of how overwhelming the evidence may point in that direction.

There is no reason to deny the defendant the right to a jury determination where the evidence seems overwhelmingly in favor of the government. An accused person has the same right to have 12 laymen pronounce upon the truth or falsify of each material overment in the indictment if the evidence against him is clear and uncontradicted, as he unquestionably would have if it were jurors are rightly trusted, in close and difficult cases, to maintain the peace and dignity of organized society, surely they may be relied upon in the plain and simple ones.

In 2000, the Supreme court held in Apprendi v. New Jersey, 530 U.S. 466 (2000), that any fact other than the fact of a prior conviction that exposes a defendant to a penalty in excess of the statutory maximum must be pled and proved to a jury beyond a reasonable doubt.

On June 24, 2004, the Supreme Court in Blakely v. Washinton, 540 U.S. 965 (June 24, 2004), struck down a state sentencing scheme that in many ways resembles the federal sentencing guideline.

In Blakely, the Supreme Court considered whether the sentencing procedure followed by courts in the state of Washington deprived the petitioner of his "federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential

to his sentence." 204 WL 1402697 at 4. In the state proceedings, the <u>Blakely</u> petitioner involving domestic violence and use of a firearm. <u>Id</u> at 2. Under the Washington Criminal Code, second-degree kidnapping is a class B felony that carries a maximum statutory sentence of ten years. <u>Id</u>. The Washington Sentencing Reform Act (the Washington Act) further limited the sentencing range to 49-53 months. <u>Id</u>. the Washington Act, however, permitted the judge to impose a sentence above the range upon finding "substantial and compelling reasons justifying an exceptional sentence." <u>Id</u>. (citing Wash. Rev. Code § 9.94 A. 210 (2)). During the petitioners sentencing proceeding, the judge imposed an "exceptional sentence" of 90 months. <u>Ud</u>. at 3. This enhanced sentence was based on the judge's finding that the defendant used "deliberate cruelty" which is a statutorily enumerated ground for departure in domestic violence cases under the Washington Act. <u>Id.</u>

The sentence was upheld on rehearing and on appeal to the Washington State Court of Appeals. <u>Id</u> at 4. The Washington Supreme Court denied discretionary review. <u>Id.</u>

On review to the United States Supreme Court, the Court held that the state's sentencing procedure violated the petitioner's Sixth Amendment right to trial by jury under <u>Apprendi</u> and its progeny. <u>Id</u>. at 6; <u>See</u>530 U.S. 466 (2000). In <u>Apprendi</u>, the Court determined that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." <u>Id.</u> at 490. The court reasoned that the Due Process Clause and the Sixth Amendment right to a jury trial "indisputedly entitles a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged beyond a reasonable doubt." <u>Id.</u> at 477.

The Supreme Court in. <u>Blakely</u> held that a judge may not use facts not admitted by the defendant or not found by a jury to increase sentence beyond the guideline range authorized by the jury or guilty plea. To do otherwise violates the defendant's Sixth Amendment right to be tried by a jury.

The court in <u>Blakely</u> said that Blakely's right to a jury trial meant that jurors should have weighted in on any factors that boosted the sentence. Justice Scalia

stressed a broad right to a jury trial: "Just as suffrage insures the people's ...control in the legislation and executive trenches, jury trial (ensures) their control in the judiciary.

Petitioner here states that because the facts supporting the finding in her case were neither admitted by the defendant nor found by the jury, the sentence violated the defendant's right to trial by jury.

Petitioner argues that the Apprendi line of cases, as clarified by Blakely, establishes that her sentence violates Petitioner's Sixth Amendment right to a jury trial and that the court's imposition of this sentence constitutes clear error.  Proper analysis of this argument requires the court to (1) determine, in light of Blakely, the facts on which it is constitutionally permissible to base Petitioner's sentence and the maximum sentence permitted by these facts and (2) compare the maximum sentence to that imposed. In so doing, Petitioner asserts that this court will conclude that Petitioner has thus far served more time than she should legally have served.  Petitioner has been serving time well beyond what the law allows for the crime to which she confessed on the basis of a finding submitted to the court by the probation department and sentenced by the trial judge.  The ruling in Blakely gives Petitioner a right to demand that every fact that could lengthen her sentence should have been put to a jury and proved beyond a reasonable doubt.

Since June 24, 2004, several other courts have followed Blakely, supra.  In United States v. Croxford, No.2:02-CR-00302 PGC (D.Ut. June 29, 2004), the Honorable Paul G. Cassell noted three options for dealing with Blakely in terms of a remedy for aggrieved criminal defendants:

   (1)The court could convene a sentencing jury, which would determine (presumably by proof beyond a reasonable doubt) whether the facts underlying the enhancement could be proven;  (2)the court could continue to follow the other sections of the Guidelines apart form the defective upward enhancement provisions; or (3)the court could treat the Guidelines as unconstitutional in their entirety in this case and sentence Croxford between the statutory minimum and maximum.

After rejecting the first and second options, the court chose the third option "by default..." Id, slip op. at 24.

In reviewing Croxford, supra, Judge Goodwin in the Southern District of West Virginia states that..."based on my reading of Blakely, I part ways with Judge Cassell concerning a choice between available options." "I endorse Judge Cassell's approach, however, to the extent he stresses the continuing necessity of considering all subsections of Section 3553 in imposing sentence following Blakely.

Judge Goodwin was one of the first judges to apply Blakely in the case of United States v. Ronald Shamblin, Cr. 03-217 (S.D.W.V. June 30, 2004). In said case, Judge Goodwin who had already knocked down a life sentence to twenty years under Apprendi, further reduced it on a Rule 35 motion to 12 months under Blakely, based only on those sentencing factors that the defendant admitted during the plea colloquy (i.e. buying sudafed in exchange for meth). In granting defendant shamblins motion, Judge Goodwin stated the following:

> "Today, Shamblin's case illustrates the upheaval
> that Blakely will cause in federal courts, at least
> for a time. At 240 months, Shamblin's sentence represented
> much that is wrong about the Sentencing Guidelines;
> at 12 months, it is almost certainly inadequate.
> My duty, however, is only to apply the law as I find
> it. Accordingly, I have GRANTED the defendant's
> motion.

Petitioner here makes only on request of the District Court of the District of Massachusetts - that being that they too follow the ruling outline in Blakely. The end result would be a ruling in favor of Petitioner.

## HEARING

Petitioner seeks an evidentiary hearing.  There is a presumption in favor of holding a hearing on a §2255 motion unless the allegations are vague, incredible, conclusory or would merit no relief even if true.  Machibroda v. United States, 368 U.S. 487, 495 (1962).  (1) Defense Counsels violated Petitioner's Sixth Amendment Constitutional right to effective assistance of counsel; (2) Petitioner's right to an Appeal was denied and (3) Petitioner's Sixth Amendment Right to have a jury decide certain facts which resulted in the lengthening of her prison sentence and as spelled out under Blakely v. Washington.  For these reasons, Petitioner is entitled to a hearing under §2255.

Respectfully submitted

Margarita Munoz
Pro Se

CERTIFICATE OF SERVICE

I certify that on July 20, 2004, I mailed a complete copy of this §2255 Application and Brief and all attachments first class mail to: Mr. John Farley, United States Attorney's Office, John Joseph Moakley Federal Courthouse, 1 Courthouse Way, Suite 9200, Boston, Mass  02210.

Margarita Munoz
Pro Se