AFFIDAVIT
OF
MARGARITA MUNOZ

THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BOSTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CRIMINAL NO: 1-99-CR-10407 |
| | ) | |
| MARGARITA MUNOZ | ) | |
| | ) | |

**AFFIDAVIT**

I, Margarita Munoz, am over the age of eighteen, and duly affirm as follows:

1. I was a defendant in the case of U.S. v. Margarita Munoz, Criminal Action No. 1-99-CR-10407 in the United States District Court for the District of Massachusetts.

2. I was represented in my case by Mr. Morris Goldings of Mahoney, Hawkes & Goldings, 75 Park Plaza, Boston, Mass 02116 initially and then by Michael B. Cohen of 601 S. LaSalle Street, Suite #700 Chicago, Ill 60605.

3. On July 20, 2004, I filed a motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.

4. My case actually started on January 20, 2000 on that day, I was getting ready at 5:00 a.m. to go to work. There was banging on my door. I heard federal agents banging and telling me to open the door at once.

5. When I opened the door, two agents entered my home. They read me my Miranda rights in English - of course, I did not understand what they were saying. I do not speak or read English fluently. (Another inmate who is bilingual is writing this for me in English after I wrote it down for her in Spanish).

6. After reading me my miranda rights in English, the agents then asked me if I understood what they were saying. I was so nervous that I told them "yes". One of the agents started asking me a lot of questions. When I told them I wanted to speak to a lawyer they told me that would not be a good idea if I wanted them to help me. They then asked me if I had any drugs or money in the house. I told that I did not have any drugs. I told them that I had $39,000 in the house. They informed me that if I told them everything and assisted them with this case that I would get a reduction in my time.

7. Based on the fact that they told me that I would get a "shorter" sentence if I assisted them, when I got to the police station in Revere and was fingerprinted, I told them everything I knew. They told me to call Carlos Matias on the telephone. They wanted him and they were going to use me to set him up.

8. I did everything the agents asked. I called Carlos Matias on the phone which they gave me. I spoke to him while they listened in on my conversation. They said that "they had gotten what they needed". After I hung up from my conversation I was then taken to court (with all my other co-defendants). We were brought before the Magistrate, I was assigned a court appointed attorney, however, the lawyer who represented my husband - his name was Morris Golding - told me not to accept the court appointed attorney. He told me that he would be able to handle my case along with that of my husband. I agreed.

9. A few days later, I was taken to see the Prosecutor. He told me with my attorney there that if I told him everything that he would see to it that I received a reduction. I didn't know what he meant but my attorney Mr. Golding told me to tell him everything - that I would be able to get a "5K2.19 reduction." Again, I really did not know what he meant but I realized that it would help me not to have to go to prison. They also told me that if I signed a plea agreement that I would also get 3 points deducted from my overall sentence. As a result, I did <u>exactly</u> what they told me to do and I told my husband to do the same.

10. My attorney, Mr. Morris Golding told me that if I told them the truth and answered all their question that I would only get a two year sentence. He promised me that in front of the prosecutor. He said that he and the prosecutor had talked and had reached an agreement. I believed him <u>so</u> I told them everything that I knew.

11. They stopped taking me to Court for a while. I didn't know why (at the time) but I later found out that my attorney Mr. Morris Golding had been arrested and sentenced to prison and had his license t practice revoked. ( <u>See</u> Exhibit 1).

12. My Attroney, Mr. Golding was charged with stealing 17 million dollars from several of his clients. Mr. Golding pleaded guilty to this charged and was sentenced to five years in prison.

13. The only was I discovered this information about my attorney was from my sister who told me about it and sent me some newspaper clippings. ( <u>See</u> Exhibit 1).

14. I thought I was going to go crazy. I didn't know what to do. In May of 2001, they took me to Niante, Conn. I was there for three (3) months. Still not knowing anything about my case, I asked my daughter who was eighteen (18) years old at the time to find me another court appointed lawyer.

15. In July of 2001, while I was still in Connecticut, a lawyer by the name of Michael B. Cohen told me he was going to represent both me and Enrique Majia (my common law husband). He told me not to worry about anything, that he was going to resolve everything for us. Since I was so scared, I told him O.K. and accepted everything he told me.

16. After that day, Mr. Micheal Cohen called on me again and <u>we met to discuss my case</u>. Mr. Cohen suggested that I take a Plea Bargain, accepting a guilty plea. I was then taken to Framingham, Mass and in that same week, I was before the magistrate, Ms. Bowel. I met with Mr. Michael Cohen. He took me into a small room near the courtroom and told me what to expect when I went inside. He told me that he was going to represent both me and my husband Enrique Mejia. Mr. Cohen told me just to say "yes" to everything he said. At this hearing, Mr. Cohen was appointed as our attorney. After the hearing, I was taken back to Niante, Connecticut. I tried on several different occasions to reach my attorney but to no avail. I tried calling my family tried to call him but

he did not respond to them either. I left <u>many</u> messages but he never called me back - <u>never</u>. My family left messages as well but he never called them back either.

17. My husband was the one who wrote and told me that we were going to court on October 28, 2001. In fact, on October 28, 2001 only my husband was taken to court. I, however was not taken at that time.

18. In January of 2002, I was taken back to Massachusetts. I was taken back to court <u>without</u> my attorney. I was forced to meet with the Prosecutor who <u>again</u> started to question me. He asked me if I knew Joel Nunez and that if I told him where Mr. Nunez was that I would only be sentenced to 2 years. I told him that I didn't know exactly where he was but that I thought he was in a small town in Massachusetts or else he would have returned to the Dominican Republic. I also told the Prosecutor other things he needed to know.

19. On April 18, 2002 both my husband and I were taken to court in order to get sentenced. On that day, they sentenced my husband to 10 years. They took me on this day for me to plead guilty and to get sentenced as well. Judge Edward Harrington however did not want to sentence me that day since the Prosecutor was asking for 10 years for me as well.

20. Judge Edward Harrington told the Prosecutor to take two weeks and work something out. On the same day, I met with my attorney. He went over my PSI with me. I told him that there were <u>a lot of lies</u> on it. He told me he would have them corrected; or at best, let them "be" since the information produced in the PSI was not of great importance. He never did correct it.

21. On May 20, 2002 I was again taken to be sentenced. Even though my attorney Mr. Golding has made a promise to me that I would get my 3 points for acceptance of responsibility and my 5K2.19 reduction even though the Prosecutor promised that I would receive a two year sentence, they all lied to me. I got a 10 year sentence. The exact same time as my husband who was a repeat offender. yet I received a 10 year sentence. After all the assistance I gave to the Prosecutor, I still received a ten (10) year sentence. Everyone lied to me.

22. After my sentencing, Judge Edward Harrington told me that I had the right to appeal my case. When I returned to prison I wrote and told them that I wanted to appeal my case. The letter dated 5-24-2002 was noted on my Docket Sheet as item #390 (Exhibit 2). In said letter, I also requested that another attorney be appointed to represent me. I <u>never</u> heard from the court.

23. My notice of appeal in fact was never sent to the Appellate Court. I, of course did not know this at the time nor did I understand what it meant.

24. By April 30, 2003 I still had not heard from the Court or from anyone. As a result, I filed a motion with the Prosecutor telling him that I still needed to get my reduction. ( <u>See</u> Docket # 414 & 417).

25. I finally received a reply from the Prosecutor. ( <u>See</u> Exhibit 3). He indicated that there was nothing that he could do however he acknowledged the fact that there was nothing that he could do however he acknowledged the fact that a <u>big mistake</u> had been made by the court when they did not send my case to the court of appeals. Again in his memorandum, he said that he would notify the court about their failure to process my appeal. Even having done so - I still have not heard from the Court.

26. Another inmate told me to file this motion to get this matter taken care of since under the Constitution I have a Sixth Amendment to appeal my case. Also, because of the recent case of Blakely v. Washington, I would like to receive whatever benefits I am entitled to.


I, Margarita Munoz do state that the above document was read to me in Spanish by someone fluent in Spanish and I do swear that the above is true to the best of my recollection.


Respectfully Submitted

*Margarita Munoz* (signature)
Margarita Munuz
Pro Se

_____, Case Manager;
Authorized by the act of July 7, 1955, as
Amended to Administer Oaths, (18 U.S.C. 4004)

Mitch Hughes witness