**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MARGARITA MUNOZ,<br>        Petitioner<br><br>v.<br><br>UNITED STATES OF AMERICA<br>        Respondent | )<br>)<br>)<br>)<br>)    CIVIL NO. 04-11699-EFH<br>)<br>)<br>)<br>) |

**GOVERNMENT'S RESPONSE TO PETITIONER'S**
**MOTION FOR § 2255 RELIEF**

The United States of America, by its attorney, Michael J.
Sullivan, United States Attorney for the District of
Massachusetts, responds to the motion filed by the petitioner,
Margarita Munoz ("Munoz") seeking relief from her sentence under
Title 28, United States Code, Section 2255.  In that motion,
Munoz claims (1) ineffective assistance of counsel; (2) denial of
her right to appeal; and, (3) that the Supreme Court's decision
in <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004) dictates a
reduction in -- or, at the least, a reconsideration of -- the
sentence imposed by this court over two years ago.  For the
reasons set forth below, the government submits that this
petition is procedurally and legally foreclosed and that the
motion it should be denied, without an evidentiary hearing.

**Statement of the Case**

1.    **The criminal case; Munoz's guilty plea and sentencing**

Munoz, along with her 14 co-defendants and others,
participated in a sophisticated drug trafficking scheme that

involved the distribution of multi-kilograms of cocaine and heroin in the Massachusetts area.  [PSR ¶¶ 7, 9].  Munoz and one of her coconspirators, Enrique Mejia ("Mejia"), or others operating on their direction, traveled to New York to obtain between 500 grams and one kilogram of heroin at a time. [PSR ¶ 9].  Munoz and Mejia would transport the heroin to Massachusetts for subsequent distribution to their customers. [PSR ¶10-11]. During the course of the conspiracy, Munoz was involved in more than 3 kilograms of heroin and more than 15 kilograms of cocaine. [PSR ¶ 14].[1]

On April 18, 2002, as part of a plea agreement, Munoz pleaded guilty to Count One of the Second Superseding Indictment, charging her and others with conspiracy to distribute, and to possess with intent to distribute, cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

In the plea agreement, the parties agreed to take certain positions with respect to the sentencing guidelines calculations. Those calculations indicated that Munoz' adjusted offense level would be 37, but would be reduced by three levels for acceptance of responsibility pursuant to U.S.S.G. §3E1.1. [Plea Agreement, ¶ 3.] Munoz also agreed to a written statement of facts in which she admitted, *inter alia*, that over 3 kilograms of heroin and

---

[1]Munoz specifically agreed to the facts set forth above. [PSR 1].

over 15 kilograms of cocaine were reasonably foreseeable to her. (See, Docket No. 370, Statement of Facts, ¶ 9). She also admitted to her specific actions in the conspiracy, including transporting drugs, collecting and distributing drug proceeds and maintaining drug ledgers. See, e.g., Id. at ¶¶ 5, 51, 61, 68 and 131).

The plea agreement, which Munoz signed, contained a waiver of appeal provision. [Plea Agreement ¶ 7]. This provision stated, in part, that the defendant knowingly and voluntarily waived her right to appeal or collaterally challenge:

> (1) [Her] guilty plea and any aspect of Defendant's conviction . . .;
>
> (2) The adoption by the District Court at sentencing of any of the positions [relating to] offense conduct, adjustments and/or criminal history. . .; and,
>
> (3) The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney, . . .

In the plea agreement, Munoz represented that she "discussed [the plea agreement] with my attorney. * * *" She stated that she understood "the crime to which I have agreed to plead guilty, the maximum penalties for the offense and the Sentencing Guideline penalties applicable to it. I am satisfied with the legal representation provided to me by my attorney." Finally, Munoz acknowledged that she was "entering into this Agreement freely, voluntarily, and knowingly" because "I am guilty of the

offense to which I am pleading guilty and I believe this Agreement is in my best interest." Munoz' counsel also acknowledged that he had discussed with Munoz the meaning of the plea and that Munoz entered the Agreement freely, voluntarily and knowingly.

The court, having the benefit of a pre-plea PSR, scheduled the change of plea and sentencing hearings for both Munoz and co-defendant Mejia on the same day, April 18, 2002. Before this date, on April 8, 2002, the government filed a motion pursuant to § 5K1.1 of the Sentencing Guidelines on behalf of Munoz. In the motion, the government advised the court that Munoz had provided substantial assistance, and in unequivocal terms, stated that it would be seeking a sentence of 126 months' imprisonment, a five year term of supervised release, no fine and $100 special assessment. (Docket No. 363).

The change of plea went forward on April 18, 2002, but the sentencing was continued to a later date. During the plea colloquy, Munoz again confirmed that she reviewed the plea agreement and understood it. (Transcript from April 18, 2002, hearing, p. 5)("April 18 Tr., p."). She admitted that she reviewed the agreement after consulting with her attorney. April 18 Tr. p. 6. She was told that she faced a minimum mandatory term of imprisonment of ten years, and a maximum term of life. April 18 Tr. pp. 3, 8. She admitted to the court that she

4

understood the maximum penalties involved.  April 18 Tr. pp 8-9.

On May 22, 2002, the sentencing was held.  As set forth in its previously filed substantial assistance motion, the government recommended that the court impose a sentence of 126 months' imprisonment.  After hearing argument from both counsel, the district court sentenced Munoz to 120 months' imprisonment, 60 months' supervised release and a $100 special assessment. Transcript from May 22, 2002 sentencing, p. 12.  ("May 22 Tr., p.").  This sentence was at the minimum mandatory sentence provided for by statute.  At the conclusion of the hearing, Munoz' attorney requested leave to withdraw as her representative, which the court allowed.  May 22 Tr. p. 13.

The Judgment in a Criminal Case, ordered on May 22, 2002, was entered on the docket on May 28, 2002.  Munoz did not file a timely notice of appeal, but on April 30, 2003, she filed a "Motion for Reduction of Sentence Pursuant to U.S.S.G. § 5k2.2". The motion was denied on July 29, 2003.

2.    **Munoz's §2255 petition.**

On July 27, 2004, over two years after the judgment in her criminal case became final, Munoz filed a petition to vacate or set aside her sentence pursuant to 28 U.S.C. §2255.  In her petition, Munoz made various claims regarding the ineffectiveness of her counsel.  She claims that her original attorney, Morris Goldings, was ineffective because he told her that if she

5

cooperated, she would get a "5-K2.19" motion (presumably a motion pursuant to 5K1.1) and, if she signed the plea agreement, she would get a 3-point deduction.  She claims that her attorney and the prosecutor both told her, apparently at different times, that she would receive a two-year sentence.  Munoz also complains about her second attorney, Michael Cohen.  She claims that Attorney Cohen failed to correct so-called "lies" in Munoz' presentence report.  She also claims that Attorney Cohen was ineffective for failing to ensure her appeal was "addressed by the appellate court."

In addition, Munoz claims that she wrote a letter to the court requesting an appeal of her case and requesting that an attorney be appointed.[2]  She claims that this "appeal" was denied her.  Finally, she also claimed that under the Supreme Court's decision in <u>Blakely v. Washington</u>, 540 U.S. 965 (June 24, 2004) she was denied her right to have facts presented to the jury.

As set forth below, it is the position of the government that Munoz's petition must be dismissed or denied, without an evidentiary hearing, for the following reasons: (1) her petition

---

[2]The docket sheet reflects an entry made on June 20, 2002, of a "[l]etter (non motion) filed by Margarita Munoz, dated 5/24/02, re: appeal."  The court's file does not contain a copy of the letter, and the government is unable to locate the copy it previously had in its possession.  The docket also includes entries allowing Munoz' motion to proceed without payment of fees and motion for appointment of counsel, both of which were allowed on June 19, 2002.

is untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214; (2) her factual allegations are meritless, and (3) neither <u>Blakely</u> nor <u>Booker</u> are retroactive, and, therefore, do not apply to Munoz' sentence.

**<u>ARGUMENT</u>**

**I.**

**The One-Year Limitation Period For**
**Filing Petitions under §2255 Expired Well**
**<u>Before Munoz Filed Her §2255 Petition</u>**

When the Antiterrorism and Effective Death Penalty Act of 1996 was enacted, Congress, <u>inter</u> <u>alia</u>, placed new time limits on the filing of petitions under Section 2255.  Section 2255 provides as follows:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of --
>
> > (1)the date on which the judgment of conviction becomes final;
> >
> > (2)the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3)the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

7

                    (4)the date on which the facts supporting
                    the claim or claims presented could have
                    been discovered through the exercise of
                    due diligence.

Title 18, United States Code, Section 2255 (1)-(4).

     In this case, Munoz did not file the instant petition until

well after her judgment became final.  Because the case was not

timely appealed, her criminal judgment became final, at the

latest, on June 7, 2002.  A defendant must file an appeal within

10 days of the entry of the judgment in a criminal case.  Fed. R.

App. P. 4(b)(1)(A)(i).  Here, the judgment was entered on May 28,

2002, and Munoz' notice of appeal should have been filed, at the

latest, by June 7, 2002.  She failed to file a notice of appeal

by that day.  Therefore, the expiration of the period for filing

the notice of appeal made the judgment final and triggered the

one-year period of limitations for filing a §2255 petition.

Kapral v. United States, 166 F.3d 565, 575 (3rd Cir. 1999)(if

defendant does not appeal, judgment becomes final when appeal

period expires).[3]

_____

     [3]In another context, the Supreme Court has defined the
meaning of "final" as when "a judgment of conviction has been
rendered, the availability of appeal exhausted, and the time for
a petition for certiorari elapsed or a petition for certiorari
finally denied." Griffith v. Kentucky, 479 U.S. 314, 320 (1987).
Some courts have adopted a similar definition for assessing the
finality of unappealed convictions when determining the starting
point for the one-year limitation period for §2255 petitions.
For example, the Third Circuit has stated that:

               If a defendant does not pursue a timely
               direct appeal to the court of appeals, his or

                              8

Munoz's motion, filed more than two years after the judgment became filed, does not allege any claims that would toll the one-year limitation period under other subsections of 28 U.S.C. § 2255. There were no governmental impediments to making her claim within the meaning of 28 U.S.C. §2255(2). Her claim does not arise out of a newly cognizable right, made retroactively applicable to her petition. 28 U.S.C. § 2255(3). Finally, Munoz's claims are based upon facts that were known to her at the time of sentencing; therefore, this is not a motion grounded on newly discovered evidence. 28 U.S.C. § 2255(4).

In summary, this petition is too late, and is therefore barred by the timing provisions of Title 21, United States Code, Section 2255.

**B.**

## Even If Munoz' Petition Were Timely, Her Claims For Relief Must Nonetheless Fail

A petitioner seeking relief under § 2255 must demonstrate an entitlement to relief or to an evidentiary hearing by a

---

her conviction and sentence become final, and the statute of limitations begins to run, on the date on which the time for filing an appeal expired.

Kapral, 166 F.3d at 577; see also Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The Fourth Circuit has taken a stricter view and stated that an unappealed conviction becomes final on the date the judgment of conviction is entered by the district court. United States v. Sanders, 247 F.3d 139, 142 (4th Cir. 2001).

9

preponderance of the evidence.  Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir.), cert. denied, 474 U.S. 923 (1992). Summary dismissal of a § 2255 petition is appropriate when the motion: (1) is inadequate on its face or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.  United States v. Carey, 50 F.3d 1097, 1098 (1st Cir. 1995).  As the First Circuit noted in Dziurgot v. Luther, 897 F.2d 1222 (1st Cir. 1990), a court may rule on the merits of a petition if "petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because 'they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'"  Id. at 1225 (quoting Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989)).  When a claim is based upon facts with which the district court is familiar, "the court may make findings without an additional hearing, and, as in the case for findings of the trial court generally, those findings will not be overturned unless they are clearly erroneous."  United States v. DiCarlo, 575 F.2d 952, 954-955 (1st Cir.), cert. denied, 439 U.S. 834 (1978).  To be entitled to a hearing, a petitioner "must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings."  David v. United States, 134 F.3d 470, 477 (1st Cir.), cert. denied, 504 U.S. 955 (1998).  Here,

the Court should deny petitioner's motion without an evidentiary hearing because the record establishes that petitioner is not entitled to relief.

1.    **Even if Munoz' § 2255 Petition Were Timely, She Has Nonetheless Failed To Meet The Stringent Requirements of Strickland v. Washington**

Munoz has a claim of ineffective assistance of counsel.  In order to raise successfully such a claim, petitioner must satisfy the stringent requirements set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under Strickland, petitioner must show both that his counsel's performance fell below "an objective standard of reasonableness" and that he was prejudiced by his counsel's errors.  Id. at 687; see also Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).  Under Strickland, there is a strong presumption that counsel's conduct fell within the wide range of legal assistance that may be considered reasonable. Strickland, 466 U.S. at 689.  As the Supreme Court noted, "[t]here are countless ways to provide effective assistance in any given case." Id.   Even if an attorney's assistance was unreasonable, Strickland further requires that the defendant show that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  Because petitioner here can satisfy neither prong of the Strickland standard, her motion must be denied.

11

Munoz complains that her attorneys (first, Attorney Goldings, and then Attorney Cohen) were ineffective because they told her if she pled guilty, she would get a 5-K motion and a three-point level reduction in sentence.  There is no ineffective assistance of counsel here.  That is exactly what Munoz got.  As set forth in paragraph (3) of the plea agreement, the government and Munoz both agreed to the applicable guidelines calculations. Paragraph (3)(c) specifically acknowledges that Munoz should be credited three levels for acceptance of responsibility. Paragraph (8) contains a cooperation agreement, and, paragraph 8(b) provides the terms for the government's filing of a substantial assistance motion.  In it, the U.S. Attorney agreed that, if Munoz provided substantial assistance:

> [A]t or before the time of sentencing, [he] will make a motion under U.S.S.G. § 5K1.1, and if the U.S. Attorney determines it to be appropriate, 18 U.S.C. § 3553(e) so that the sentencing court may impose a sentence below that which otherwise would be required under the Sentencing Guidelines and the relevant statutes.  The determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review.

Paragraph 8(b) also provided that:

> The U.S. Attorney reserves the right, in his sole discretion, to file a motion under U.S.S.G. § 5K1.1 but not under 18 U.S.C. § 3553(e).

These promises, which Munoz cites in her petition, were met.

As is clear from the docket, the government determined that Munoz provided substantial assistance, and, pursuant to paragraph 8(b) filed a motion under § 5K1.1 of the Sentencing Guidelines. Further, as provided in paragraph 8(b), the United States Attorney exercised his discretion not to file a motion pursuant to 18 U.S.C. § 3553(e), as he was entitled to do. Thus, Munoz' insinuations that Attorney Goldings and/or Attorney Cohen misled her with respect to a § 5-K motion, and credit for acceptance of responsibility, is a pure fiction.

Munoz' states in her petition that she was promised "two years" by Attorney Goldings and the prosecutor. First, any actions taken by Attorney Goldings which led to the execution of the plea agreement are, for all intents and purposes, superseded by the actions taken by Attorney Cohen. Munoz does not claim that Attorney Cohen told her she would get a sentence of two years. Accordingly, even if Attorney Goldings mentioned two years to her, Munoz had replacement counsel who, presumably, set the record straight.

Further, the veracity of Munoz' statement that she was promised two years is simply belied by the record. As mentioned, the government filed its motion pursuant to §5K1.1 of the Guidelines on April 8, 2002 (Docket No. 363), in which it stated it intended to recommend 126 month's imprisonment. The change of plea did not occur until April 22, 2002. Munoz, therefore, was

well aware that the government intended to recommend a sentence
of 126 months' imprisonment even **before** her change of plea.  Yet,
she nonetheless chose to go forward with the plea.

   In addition, her plea agreement lists the maximum and the
minimum mandatory sentences, and no where is a two year term of
imprisonment mentioned, much less contemplated.  Paragraph (17)
of the plea agreement specifically acknowledges that the plea
agreement, and a proffer letter entered into earlier, represented
the complete and only agreement between the parties.  Certainly,
if there were an agreement by the prosecutor that the government
would recommend that Munoz serve a two-year term of imprisonment,
it would have been so stated in the agreement.  Finally, during
the plea colloquy, Munoz was told the minimum mandatory and
maximum sentence, and she stated that she understood.  She was
asked if "anyone threatened [her] or otherwise induced [her] to
change [her] plea to guilty against [her] will," and she
responded "no."  (April 18 Tr., p. 9).  Again, if she were
induced to plead guilty on a promise of a two-year sentence, she
would have so stated at the plea hearing.  No where in the record
does it appear, or even suggest, that she was promised such a
sentence.

   In addition, Munoz complains that Attorney Cohen was
ineffective because the PSR contained "lies" which he did not
attempt to correct.  Munoz does not identify what, if any, such

"lies" exist in the PSR, or how those "lies" affected her sentence. Her motion should be denied on that ground alone. Further, if any of the "lies" in the PSR relate to the events underlying the criminal charges, it is important to note that again, her statements in the 2255 petition are belied by the record in this case. First, Munoz admitted at the plea colloquy that the facts as stated by the prosecutor were true, (Plea Tr. p. 16), and, at the same time, chose not to add any additional facts to the prosecutor's rendition. <u>Id.</u> Second, she, and her attorney, executed a complete statement of facts prior to the plea (see, Docket Entry No. 370). In those facts, she admitted that she was involved in over 15 kilograms of cocaine, and over three kilograms of heroin. Statement of Facts, ¶ 9. She admitted she was involved in collecting and accounting for drug proceeds (see, e.g., Statement of Facts, ¶¶ 68, 70, 71, 73, 75, 91). She admitted she helped transport the narcotics from New York to the Boston area (Statement of Facts, ¶ 74, 108). She admitted she delivered cocaine to customers (Statement of Facts, ¶ 101, 110). Given these factual admissions, even if the PSR contained misstatements, which the government contends it does not, they could not be of such a magnitude as to warrant § 2255 relief. No action could have been taken, or was taken, by counsel at the sentencing that could have changed the outcome at sentencing. The sentence was driven by the facts and her

admissions and mandated by the minimum mandatory provisions of 21 U.S.C. § 841(B)(1).

Finally, Munoz complains that Attorney Cohen failed to ensure that a notice of appeal was properly filed.  During sentencing, the Court advised Munoz that she had a right to appeal, and Munoz responded "I will appeal it." (May 22 Tr., p. 13).  However, the prosecutor then reminded the court and Munoz that she had waived her right to appeal. (May 22 Tr., p. 14). In addition, and perhaps more significantly, Attorney Cohen was clear at the sentencing that he would not be representing Munoz on an appeal.  At the hearing, he specifically requested leave to withdraw from representation, and that "if she decided to proceed to appeal, that the federal defender be appointed."  The court allowed his request to withdraw. (May 22 Tr. p. 13).  When the court allowed this motion at sentencing, Attorney Cohen no longer had a duty to ensure an appeal was filed.  This is not ineffective assistance of counsel.

### 2. Even If Munoz' § 2255 Petition Were Timely, The Failure To Appeal Does Not Warrant Relief In This Case

Munoz claims in this collateral attack that she was denied a right to appeal.  However, Munoz has failed to establish that she filed a timely notice of appeal, and the failure to do so is fatal to her claim.[4]  Because of this, the instant petition

---

[4]As mentioned, on June 20, 2002, a docket entry was made entering a letter re: appeal dated May 28, 2002.  This should not

16

should be dismissed.

The failure to file a timely appeal constitutes a procedural default.  See, Coleman v. Thompson, 501 U.S. 722, 724 (1991) (failure to file timely notice of appeal in state court deemed procedural default).  In order to excuse a procedural default in a collateral attack, a petitioner must demonstrate either cause for failing to raise a claim and actual prejudice, or actual innocense.  Bousley v. United States, 523 U.S. 614, 622 (1997).  The "actual prejudice" standard on collateral review presents a significantly higher hurdle than plain error review.  United States v. Frady, 456 U.S. 152, 166 (1982).  See, also, Ramirez-Burgos v. United States, 313 F.3d 23, 32 fn. 12 (1st Cir.  2002) ("the actual prejudice standard is more demanding than that for plain error").  In this case, Munoz has not, and cannot, establish any prejudice whatsoever.

Munoz cannot establish actual prejudice because there is none, as there are no cognizable issues for appeal.[5]  Munoz pled

_____

constitute a timely notice of appeal, because it was not entered on the docket until well after the expiration of the 10-day period.  Munoz has not met her burden in showing that, even with the benefit of the prisoner mailbox rule, that the letter was a timely notice of appeal.  See, Lattimore v. Dubois, 311 F.3d 46, 53-54 (1st Cir. 2002)(under prisoner mailbox rule, date calculated from date placed in prison mail system).


    [5]The government further notes that the plea agreement contained a waiver of appeal which barred Munoz from filing a

guilty in this case, pursuant to a plea agreement.  She executed a statement of facts on the record, and admitted the factual basis of her guilt at the plea colloquy, including the amount of controlled substances in which she was involved.  There were no sentencing errors, as the government filed a motion for a downward departure, and the court granted it.  At sentencing, the court was not bound to the Guidelines calculations to which both Munoz and the government agreed.  Indeed, the court departed below that which was recommended by the government, but was mandated by the minimum mandatory provisions of § 841(B)(1)(A) to a sentence no lower than 120 months.

Because of this, Munoz cannot establish cause and prejudice, and her procedural default in failing to file a timely notice of appeal is not subject collateral review.[6]

### 3.    Even If Munoz' § 2255 Petition Were Timely, Booker Does Not Apply Retroactively

Even assuming the Munoz had an arguable Sixth Amendment claim, her Petition nevertheless fails because the constitutional rights first recognized in Apprendi v. New Jersey, 530 U.S. 466 (2000) and subsequently extended in both Blakely and United States v. Booker, 125 S.Ct. 738 (2005) do not apply retroactively

_____

notice of appeal or challenging her conviction/sentence on collateral review, but that the waiver was not specifically addressed at the plea colloquy.

[6]Actual innocense is not at issue here.

in § 2255 proceedings.  Indeed, the First Circuit squarely held
that <u>Booker</u> does not apply retroactively in cases where judgment
was final.  <u>United States v. Cirilo-Munoz</u>, 404 F.3d 527 (1st Cir.
2005).  Virtually every other court that has considered this
issue post-<u>Blakely</u> has likewise refused to apply <u>Blakely</u> and/or
<u>Booker</u> retroactively.  <u>See</u>, <u>e.g.</u>, <u>Varela v. United States</u>, 400
F.3d 864, 868(11th Cir. 2005) ("<u>Booker's</u> constitutional rule
falls squarely under the category of new rules of criminal
procedure that do not apply retroactively to § 2255 cases on
collateral review." (citation omitted)); <u>McReynolds v. United
States</u>, 397 F.3d 479, 481 (7th Cir. 2005) (<u>Booker</u> will not be
applied retroactively to cases in which the conviction and
sentences became final prior to <u>Booker</u> being issued); <u>Green v.
United States</u>, 397 F.3d 101, 103 (2nd Cir. 2005) (neither <u>Booker</u>
nor <u>Blakely</u> apply retroactively to a second or successive § 2255
proceeding);  <u>United States v. Leonard</u>, No. 04-6197 (10th Cir.
Jan. 24, 2005) (<u>Blakely</u> and <u>Booker</u> are new rules of criminal
procedure that apply "retroactively only to cases pending on
direct review or cases that are not yet final."); <u>United States
v. Price</u>, No. 04-7058 (10th Cir. Dec. 16, 2004) (<u>Blakely</u> does
"not apply retroactively to cases on collateral review.").
Indeed, the Supreme Court itself in <u>Booker</u> expressly noted that
its holding applied to "all cases on direct review." 125 S.Ct. at
769.  <u>See also</u> <u>Zawadzki v. United States</u>, Civ. No.  04-CV-12114-

19

WGY (D. Mass. 2004) (Young, C.J.) (dismissing 2255 Petition because <u>Blakely</u> is not retroactive and "does not fit the exception under <u>Teague v. Lane</u>"); <u>Colon v. United States</u>, 04-10289-NG (D. Mass. 2005)(Gertner, J.) (denying motion to amend 2255 Petition to assert <u>Booker</u> claim without prejudice because Supreme Court has not yet declared that <u>Booker</u> applies retroactively on collateral review); <u>Orchard v. United States</u>, 332 F.Supp.2d 275, 277 (D.Me. 2004)("the extension of the <u>Apprendi</u> rule announced in <u>Blakely</u> is a rule of criminal procedure that may not be applied retroactively).  <u>See generally</u> <u>Cuevas v. C.J. DeRosa</u>, 386 F.3d 367, 368 (1st Cir. 2004) ("... if the Supreme Court in the future makes <u>Blakely</u> retroactive, the petitioner may at any time attempt to assert a claim by means of a second or successive § 2255 petition.")

Accordingly, because <u>Booker</u> is not applicable retroactively, Munoz has not established any ground for relief.

**4.    Even If Munoz' § 2255 Petition Were Timely, And If <u>Booker</u> Were Applied Retroactively, Munoz Is Still Subject To The Minimum Mandatory Sentence**

Even if <u>Booker</u> were deemed to be retroactive, Munoz would not benefit by its applicability for the reason that the court remains bound to sentence Munoz to the ten year minimum mandatory sentence provided for in Title 21, United States Code, Section 843(b)(1)(A).

In this case, the government filed a motion pursuant to §

20

5K1.1 of the Sentencing Guidelines, but did *not* file a motion
under 18 U.S.C. § 3553(e).  After the Court granted the § 5K1.1
motion, it was free to depart downward from the Guidelines, which
it did.  However, because a § 3553(e) motion was not filed, the
Court continued to be bound to the ten year statutory mandatory
minimum.  The Court, recognizing this, sentenced Munoz to as low
as it was authorized to go, 120 months'.  Booker does not alter
this analysis.  Indeed, the First Circuit has recognized that:

> "[a] mandatory minimum sentence imposed as
> required by a statute based on facts found by
> a jury or admitted by a defendant is not a
> candidate for *Booker* error."

United States v. Bermudez, 407 F.3d 536, 545 (1st Cir. 2005),
*quoting*, United States v. Antonakopoulos, 399 F.3d 68, 75 (1st
Cir. 2005).

Accordingly, even if this petition were timely filed and if
Booker were to be applied retroactively, there is no Booker error
in this case.

**CONCLUSION**

Based upon the foregoing, Munoz' motion for relief pursuant to Title 18, United States Code, Section 2255 should be deemed untimely, or in the alternative, denied, without an evidentiary hearing.

                              MICHAEL J. SULLIVAN
                              United States Attorney


                    By:   /s/ Susan M. Poswistilo
                          SUSAN M. POSWISTILO
                          Assistant U.S. Attorney


**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been served upon the petitioner (pro se) by first-class mail on this 13th day of October, 2005, at the following address:

          Margarita Munoz
          Alderson Prison Camp
          Box A
          Alderson, WV  24910

                         /s/ Susan M. Poswistilo
                         SUSAN M. POSWISTILO
                         ASSISTANT U.S. ATTORNEY